**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JEAN F. NSIMA,

        Appellant,

    v.

DEPARTMENT OF HOMELAND
   SECURITY,

        Agency.

DOCKET NUMBER
NY-0752-16-0244-I-1

DATE: March 1, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lawrence Tomscha</u>, New York, New York, for the appellant.

<u>David M. Burns</u>, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

     The appellant has filed a petition for review of the initial decision, which sustained his 40-day suspension. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to analyze the appellant's allegations of discrimination and retaliation for filing equal employment opportunity (EEO) complaints, we AFFIRM the initial decision.

## BACKGROUND

The appellant is a Personnel Security Specialist for the agency's Federal Protective Service (FPS). Initial Appeal File (IAF), Tab 6 at 41, 332. In March 2012, a female coworker began working in the same office as the appellant as a probationary Budget Analyst. IAF, Tab 8 at 58. The appellant approached this coworker during her first month of employment and made a number of statements as to the relative strength of his position in comparison to hers. IAF, Tab 6 at 333, Tab 8 at 59-60, Tab 9 at 122. For example, he advised her that the agency did not want to hire her but he persuaded management to do so, that he had a strong connection with upper management, that his coworker was in a surplus position, and that she was probationary. IAF, Tab 6 at 333, Tab 8 at 59-60. Between March and July 2012, the appellant kissed his coworker on the back of her hand three to five times, although she informed him she was married and did not "appreciate his actions." *Id.*; IAF, Tab 9 at 122. He also placed his palm on her thigh on at least one occasion. IAF, Tab 6 at 333, Tab 9 at 62, Tab 9 at 122-23. When his coworker attempted to push the appellant's hand away, he

leaned toward her in what she believed was an attempt to kiss her cheek. IAF, Tab 6 at 333, Tab 9 at 122. However, she blocked him with her hand when he was within two inches of her face. IAF, Tab 6 at 333, Tab 9 at 122.

When her probationary period ended, the appellant's coworker reported the appellant's conduct to the agency and he was moved to a different floor. IAF, Tab 8 at 62-63, Tab 9 at 123. This appears to have been the end of the matter until the appellant confronted his coworker again on August 1, 2013, at her cubicle, pointed at her, and loudly accused her of "play[ing] games." IAF, Tab 8 at 55-56, 64, Tab 9 at 332-33. The appellant's coworker immediately reported the incident to a manager.

In the meantime, on June 26, 2013, the appellant called his second-line supervisor to complain about the fact that his first-line supervisor was walking past his cubicle. IAF, Tab 6 at 333, Tab 7 at 10. During this conversation, the appellant stated in an elevated voice, "[I]f he comes by here again I am going to do something physically." IAF, Tab 7 at 10.

The agency's Office of Compliance and Security, Internal Affairs Division, investigated allegations by and against the appellant, including the allegations discussed above. IAF, Tab 6 at 341, Tab 8 at 37-38, Tab 9 at 124-25. In the course of these investigations, two Internal Affairs Senior Special Agents attempted to interview the appellant in July and October 2013. IAF, Tab 6 at 333-34, Tab 7 at 28-31, Tab 9 at 83. However, the appellant appeared for his two initial interviews, both scheduled for July 11, 2013, with an individual who presented himself as the appellant's union representative. IAF, Tab 7 at 29-30. When the Senior Special Agent present questioned why the appellant, who was not in a bargaining unit, had a union representative, the appellant left the interview without participating. IAF, Tab 6 at 333-34, Tab 7 at 30, Tab 9 at 5. An additional interview was scheduled for October 29, 2013. IAF, Tab 9 at 83. However, after a break in the interview, the appellant refused to complete a written affidavit as instructed. IAF, Tab 6 at 334.

The agency proposed to suspend the appellant for 45 days based on the following charges: (1) inappropriate conduct as it concerned the appellant's behavior toward his female coworker and his statement that he would do something physically to his first-line supervisor; and (2) his failure to cooperate in the agency's investigations, as discussed above. *Id.* at 332-38. The appellant, through his representative, presented oral and written replies to the proposed suspension. *Id.* at 74-110. After considering the appellant's replies, the deciding official upheld all the charges as specified but mitigated the penalty to a 40-day suspension, effective August 10, 2015. *Id.* at 41, 63-69.

The appellant challenged the action by filing a formal equal employment opportunity (EEO) complaint. *Id.* at 24. After the issuance of a final agency decision finding no discrimination or retaliation, the appellant filed a Board appeal and requested a hearing. IAF, Tab 1 at 2, Tab 6 at 28. On appeal, the appellant claimed that his suspension was the result of retaliation for engaging in EEO activity and resulted from harmful procedural error. IAF, Tab 1 at 5, Tab 43 at 2. He also alleged that the agency's action was barred by the doctrine of laches. IAF, Tab 87, Initial Decision (ID) at 3. The appellant failed to respond to some of the administrative judge's orders or to timely answer the agency's discovery requests. IAF, Tab 28. Therefore, the administrative judge prohibited him from presenting evidence and testimony on his affirmative defenses, other than his own testimony. *Id.*

After the 6-day hearing concluded, the administrative judge issued an initial decision in which she sustained all specifications of both charges, found nexus between the misconduct and the efficiency of the service, and upheld the reasonableness of the penalty. ID at 1-2, 4-26, 38. She found that the appellant failed to prove any of his affirmative defenses or his claim of laches. ID at 26-31. The appellant filed a petition for review challenging the administrative judge's findings, and the agency responded in opposition. Petition for Review (PFR) File, Tabs 1, 5.

## ANALYSIS

<u>The administrative judge correctly sustained the charge of inappropriate conduct.</u>

The charge of inappropriate conduct was based on five specifications (A-E), all of which the administrative judge sustained. With the exception of specification B, the specifications were based on the following allegations: the appellant made statements suggesting he had authority over his female coworker's continued employment and touched (and attempted to touch) her inappropriately on several occasions in 2012; and he made comments and engaged in unprofessional conduct on August 1, 2013, which she perceived as threatening. In specification B, the agency alleged that, on June 26, 2013, the appellant called his second-line supervisor and yelled that he was going to "do something physically" if his first-line supervisor walked past his cubicle again. IAF, Tab 6 at 333.

The agency has the burden of proving its charges by preponderant evidence. 5 C.F.R. § 1201.56(b)(1)(ii). To prove a charge of inappropriate conduct, the agency is required to demonstrate that the appellant engaged in the underlying conduct alleged in support of the broad label. *See generally Raco v. Social Security Administration*, 117 M.S.P.R. 1, ¶ 7 (2011) (setting forth the criteria for proving conduct unbecoming a Federal employee); *Parbs v. U.S. Postal Service*, 107 M.S.P.R. 559, ¶ 8 (2007) (stating the same criteria for proving improper conduct), *aff'd per curiam*, 301 F. App'x 923 (Fed. Cir. 2008). Although the appellant suggests that the agency was required to prove that he harassed his coworker, he is mistaken. PFR File, Tab 1 at 13-14. The agency here charged the appellant with inappropriate conduct, not harassment. IAF, Tab 6 at 332. It was not required to prove that the appellant's conduct was harassment, even if the proposed suspension described his misconduct as harassing, which it did not. *Id.* at 332-33; *see Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 201, 203-04 (1997) (finding that an agency that removed an appellant for the charge of improper conduct was not required to meet the higher

burden of proving he made a "threat," despite describing his conduct as "threatening" in its proposed removal; rather, it only was required to prove the elements of a charge of improper conduct).

In her initial decision sustaining all specifications of the charged misconduct, the administrative judge thoroughly addressed the record evidence, including the hearing testimony, and provided a detailed explanation for why she found the agency witnesses' version of events was credible and the appellant's was not. ID at 3-38. In making her credibility determinations, the administrative judge relied on the factors set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), including witness demeanor. ID at 4-36. In *Hillen*, the Board found that, in assessing a witness's credibility, an administrative judge should consider factors such as any prior inconsistent statement by the witness, the contradiction of the witness's version of events by other evidence or its consistency with other evidence, and the witness's demeanor. *Hillen*, 35 M.S.P.R. at 458. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

The administrative judge found that the appellant's female coworker's testimony about his inappropriate conduct specified in charge 1 was coherent, supported by her contemporaneous statements to a colleague, and consistent with her 2013 affidavit and what she reported to management.[2] ID at 4-7, 11-16. The

_____

[2] The appellant disputes the administrative judge's finding that he "did not deny having kissed" his coworker's hand. PFR File, Tab 1 at 11; ID at 13. We agree that this finding was in error. The appellant stated at one point during the hearing that he "never kissed his coworker." September 20, 2016 Hearing Transcript at 226 (testimony of the appellant). However, we decline to find that this error was harmful to the decision because the appellant later testified that "if the woman allow[s] you to kiss her hand and then she didn't report that, that means . . . nothing happened." *Id.* at 244. Further, the administrative judge recognized in her initial decision that the appellant generally denied all allegations of misconduct. ID at 4-7, 11-16.

administrative judge also found that the appellant's first-line and second-line supervisors kept contemporaneous records documenting the appellant's unprofessional conduct during the telephone conversation with his second-line supervisor referenced in charge 1, and their testimony was consistent with those records. ID at 10.

The appellant disagrees with the administrative judge's reliance on his female coworker's prior consistent statements and corroborating evidence as supporting her credibility. For example, he argues that the administrative judge should not have considered that his coworker made prior consistent statements to third parties as to the appellant's misconduct. PFR File, Tab 1 at 8, 11; ID at 5, 7, 13-14. In considering these statements as weighing in favor of the credibility of the appellant's coworker, the administrative judge properly carried out her obligation under *Hillen*. Thus, we discern no error. *See Parbs*, 107 M.S.P.R. 559, ¶ 16 (finding the consistency of a witness's two statements supported the credibility of those statements). To the extent that the appellant alleges that the corroborating evidence or testimony was hearsay, we find nothing improper in the administrative judge's consideration of this evidence. PFR File, Tab 1 at 12; ID at 5, 7, 13-14; *see Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶¶ 3, 14-17 (2014) (observing that hearsay evidence is admissible in Board proceedings, and finding that an administrative judge properly considered hearsay evidence to corroborate that the appellant engaged in the misconduct underlying her removal).

The appellant also raises a number of challenges to the administrative judge's demeanor-based credibility findings. For example, he argues that management spent years trying to frame him and mischaracterized his words. PFR File, Tab 1 at 2-3, 6-11, 13-15. He argues that, after his female coworker discovered that management was plotting against him, she accused him of threatening behavior and making sexual advances to further her career. *Id.* at 6, 14-15. He disagrees with the administrative judge's finding that his

coworker credibly testified that she felt threatened when he told her that the agency originally did not want to hire her and he had a strong connection with upper management, and reminded her that she was probationary.[3]  ID at 15-16; PFR File, Tab 1 at 12, 14-15.  The appellant also argues that no reasonable person would believe that he could get physical, as he allegedly threatened to do with his first-line supervisor, because he wears a leg brace and uses a cane to walk.  PFR File, Tab 1 at 6, 9.  The administrative judge found unbelievable the appellant's denials and his argument that he was physically incapable of engaging in the misconduct specified in charge 1.  ID at 6-7, 10-11, 15-16.  We find that the appellant's arguments on review challenging the credibility of the agency's witnesses and the administrative judge's weighing of the evidence are insufficient to cause us to disturb the administrative judge's well-reasoned findings.[4] *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility).

On review, the appellant also reasserts his argument that the doctrine of laches bars the agency from taking any action against him based on the alleged inappropriate conduct in 2012 concerning his female coworker.  PFR File, Tab 1

---

[3] Further, the appellant asserts that "a lawyer turned FPS agent" urged his female coworker to request an order of protection and/or to file a police report.  PFR File, Tab 1 at 14.  However, this fact was not mentioned in the agency's proposed suspension, suspension decision, or the initial decision.  IAF, Tab 6 at 63-73, 332-38; ID.  Thus, we do not find it relevant to whether the agency met its burden to prove the charges or penalty.

[4] As other examples of his disagreement with the administrative judge's credibility findings, the appellant asserts that his coworker's testimony about his behavior towards her was inconsistent with her prior statements and inherently improbable.  PFR File, Tab 1 at 13-15.  He asserts that his female coworker's testimony shows that he did not make her uncomfortable, and that he taught her French and they had a "cozy" relationship.  *Id.* at 12-13.  He also suggests that she lacked credibility because she did not document some of the incidents when they occurred although she testified that her friend told her to do so.  *Id.* at 15.  We similarly find these arguments unpersuasive.

at 10-13. The equitable defense of laches bars an action when an unreasonable delay in bringing the action has prejudiced the party against whom the action is taken. *Johnson v. U.S. Postal Service*, 121 M.S.P.R. 101, ¶ 6 (2014). The party asserting laches must prove both unreasonable delay and prejudice. *Id.* The administrative judge found that the agency's delay in bringing the charge was not unreasonable or prejudicial to the appellant's defense. ID at 34-36.

The appellant challenges both of these findings. PFR File, Tab 1 at 10-11. However, he points to no specific evidence to suggest he was prejudiced by the delay. Instead, he speculates that he "may not have been in the office" when he allegedly kissed his coworker on the hand. *Id.* at 11. Absent any specific evidence that the appellant sought and was improperly denied attendance information, we cannot presume that the 2 1/2 to 3 year delay between the alleged incidents and the issuance of the proposed suspension prevented him from arguing that he was not at work. *See Mercer v. Department of Health and Human Services*, 82 M.S.P.R. 211, ¶ 12 (1999) (declining to presume that an agency was prejudiced when an appellant did not file an Office of Special Counsel complaint until approximately 3 years and 9 months after her termination).

The administrative judge correctly sustained the charge of failure to cooperate in an agency investigation.

The administrative judge found that the agency met its burden of proving that the appellant failed to cooperate in an agency investigation and that the facts underlying the specifications were largely uncontested. ID at 17, 23. On review, the appellant does not dispute the conduct underlying this charge. For example, the appellant does not dispute that, on July 11, 2013, he walked out of his scheduled interviews with Senior Special Agents. ID at 22. The appellant also does not dispute that he refused to provide a written affidavit following his oral testimony on October 29, 2013. ID at 24. Instead, he argues that he felt intimidated by the agents and nothing prevented him from bringing a

representative. PFR File, Tab 1 at 16-17. Accordingly, we discern no reason to disturb the administrative judge's finding that the agency proved this charge.

<u>The appellant did not establish that the agency committed harmful error.</u>

For the first time on review, the appellant argues that the scope of the agency's investigation and the voluminous evidence produced against him constituted an abuse of authority and excessive waste of Government resources, which violated his constitutional right to due process and his right under the Fourteenth Amendment of the U.S. Constitution to protection from Governmental abuse of authority. PFR File, Tab 1 at 4-5, 9, 13-14; IAF, Tab 43 at 1-2. He contends that the agency denied him due process by failing to submit evidence in an accessible format and by using three numbering systems in the agency file, which made it impossible for him to easily find and cite documents. PFR File, Tab 1 at 6. He also argues that the agency denied his right to due process by charging him with misconduct that allegedly occurred in 2012. *Id.* at 11.

The appellant did not make a due process argument on appeal, and the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. IAF, Tab 43 at 1-2; *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). The appellant has not made that showing here. Although the Board will not consider the due process claims that the appellant raised for the first time on review, the Board will consider the claims of harmful error that he made on appeal and reasserts on review.

The appellant reasserts some of the harmful error claims that he raised on appeal.[5] PFR File, Tab 1 at 9, 14, 16-17; IAF, Tab 43 at 2. The Board will

[5] The appellant appears to withdraw his affirmative defense that the agency failed to properly process EEO claims concerning prior discipline. ID at 33; PFR File, Tab 1 at 18. The administrative judge found that the agency did not refuse to process these claims, as alleged. ID at 33. Instead, it recommended that the appellant amend an existing EEO complaint to include them. *Id.* Even assuming the appellant is challenging this well-reasoned finding on review, he does not explain why he believes it

reverse an action taken by an agency if an appellant proves that the agency committed a harmful procedural error in applying the agency's procedures in arriving at its decision. 5 C.F.R. § 1201.56(c)(1). The appellant must prove his claim of harmful error by preponderant evidence. 5 C.F.R. § 1201.56(b)(2)(i)(C). An agency's error is only harmful if the record shows that a procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 14 (2016); 5 C.F.R. § 1201.4(r). The administrative judge found that the appellant failed to meet his burden of proving harmful error, and we agree. ID at 30-34.

The appellant argues that the agency committed harmful error by neglecting his rights under the American Federation of Government Employees (AFGE) Collective Bargaining Agreement and the criminal code and by prohibiting an AFGE union representative from observing his July 11, 2013 investigative interview. PFR File, Tab 1 at 16-17; IAF, Tab 43 at 2. The administrative judge found that the appellant was not an AFGE member and, in any event, he ended this interview as soon as he was questioned regarding the union representative who accompanied him. ID at 32-33. The appellant does not dispute these findings on review. Thus, we agree with the administrative judge that the agency did not commit any error. *Id.*

The appellant's other harmful error claims are similarly unavailing. For example, he reasserts that the agency committed harmful error when it attempted to interview him based on alleged intimidation tactics used by Special Agents "toting guns." IAF, Tab 43 at 2. The administrative judge made factual findings

---

was in error. PFR File, Tab 1 at 18. Therefore, we decline to disturb it.

For the first time on review, the appellant argues that the agency was required to include a human resources review of the suspension action during processing, and that the agency committed harmful error by failing to follow this alleged procedure. *Id.* at 4. Because the appellant has not shown that this argument is based on new and material evidence not previously available despite his due diligence, we will not consider it on review. 5 C.F.R. § 1201.115(d).

based on the evidence before her that the appellant was not intimidated. ID at 33-34. Although the appellant repeats his allegations from below, he does not explain why he believes the administrative judge's specific factual finding was in error. *Id.*; PFR File, Tab 1 at 8-9, 14, 16. Thus, we discern no basis to grant review. *See* 5 C.F.R. § 1201.115(a)(2) (explaining that a petitioner who alleges that the administrative judge made an erroneous finding of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error).

The appellant also reasserts his argument that the agency committed harmful error in its penalty determination because the deciding official relied on the appellant's 5-day suspension from 2006. PFR File, Tab 1 at 18; IAF, Tab 6 at 64. The administrative judge was not persuaded that the agency violated any policy by considering this prior discipline. ID at 31-32. She went on to find that the appellant had not proven that any error in considering the 2006 discipline was harmful. ID at 32. Although on review the appellant has attempted to introduce emails from 2005 and 2006 that he alleges support his claim of error, we decline to consider this evidence because it is not new. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (finding that under 5 C.F.R. § 1201.115, the Board will not consider evidence submitted for the first time on review absent a showing that it was unavailable before the record was closed despite the party's due diligence); 5 C.F.R. § 1201.115(d) (explaining that to constitute new evidence the documents and information they contain must have been unavailable despite due diligence when the record closed below). The appellant implicitly recognizes this fact by requesting that the Board consider the evidence because the administrative judge allegedly declined to consider similar evidence below due to her imposition of sanctions.[6] PFR File, Tab 1 at 18, 23-27. The administrative judge also found that, assuming the agency committed error, it was not harmful in light of the appellant's lengthy disciplinary history. ID at 13. The

---

[6] We discuss and uphold these sanctions below.

appellant has not disputed this finding. Thus, we are without any basis to disturb the administrative judge's denial of this harmful error claim. ID at 32.

The administrative judge properly found that the appellant failed to prove retaliation for filing EEO complaints.

The administrative judge found that the appellant failed to establish that the agency's suspension action was motivated by retaliation for his prior EEO activity. ID at 30. She found that the appellant's testimony of racial slurs and "put downs" by management officials was not credible. ID at 28-29. She also found that the appellant provided absurd testimony in support of his argument that the agency was a "well-organized mafia" out to get him solely because of his race. ID at 29. On review, the appellant does not dispute these findings.[7]

To the extent that the administrative judge suggested that the evidence should be analyzed as either "direct" or "indirect" evidence, we modify this reasoning to find that, regardless of the characterization of the evidence, the appellant failed to meet his burden to prove that retaliation was a motivating factor in the contested personnel action. ID at 27-28 n.11; *see Gardner v. Department of the Army*, 123 M.S.P.R. 647, ¶¶ 29-31 (2016) (explaining that evidence of EEO discrimination or retaliation should not be separated into different categories as if subject to different standards, but instead should be considered as a whole), *clarified by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-24. We find that the administrative judge properly considered the witnesses' testimony and the evidence as a whole in finding that the appellant failed to show that retaliation was a motivating factor in his suspension. ID at 30. Because we find that the appellant failed to show that retaliation was a motivating factor, we need not reach the issue of whether he

---

[7] To the extent that the appellant is raising a claim of race discrimination on review, as discussed above, it appears that the administrative judge addressed the appellant's testimony of racial comments, but did not credit it. ID at 28-29; PFR File, Tab 1 at 3-4. Therefore, we find that she implicitly denied any such claim. We discern no basis to disturb her findings.

showed that retaliation was a but-for cause of the suspension. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-22, 29-33.[8]

 The administrative judge correctly found that the agency established nexus and the reasonableness of its penalty.

In addition to the requirement that the agency prove its charges by preponderant evidence, the agency also must prove that there is a nexus, i.e., a clear and direct relationship between the articulated grounds for the adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate Government interest. *Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 24 (2016). Here, the administrative judge found that the agency established nexus between the charges of inappropriate conduct and failure to cooperate in an agency investigation and the efficiency of the service. ID at 25-26. The appellant does not challenge this finding on review, and we find no basis to disturb it.

When, as here, all of the charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant *Douglas* factors, and exercised management discretion within tolerable limits of reasonableness. *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors relevant to penalty determinations). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Campbell*, 123 M.S.P.R. 674, ¶ 25; *Douglas*, 5 M.S.P.R. at 306. The

---

[8] In his oral reply, the appellant refers to his prior EEO activity, including EEO complaints filed in 2008, 2009, 2011, and 2014. IAF Tab 1 at 24-26. It is not clear whether, on review, the appellant is claiming reprisal based upon a prior complaint of disability discrimination. Assuming arguendo that the appellant's prior complaints did include claims of disability discrimination, the appellant would need to prove that the retaliation was a but-for cause of the suspension at issue in this case. *See Pridgen*, 2022 MPSB 31, ¶¶ 45-47. We find that the appellant has not met this burden.

Board will modify the agency's chosen penalty only if it finds that the agency's judgment clearly exceeded the limits of reasonableness. *Douglas*, 5 M.S.P.R. at 306.

Here, the decision letter shows that the deciding official considered the relevant factors including the seriousness of the appellant's repeated misconduct, which he found unprofessional, discourteous, and disruptive to his work and his coworkers. IAF, Tab 6 at 64-65, 70-73. The deciding official considered that the appellant's misconduct was contrary to the behavior expected of a Personnel Security Specialist, he impeded an official agency investigation, and his misconduct could reflect adversely on the agency's regional reputation. *Id.* at 64-65. He further considered the appellant's prior discipline for rude, inappropriate, and unethical behavior at work: the 5-day suspension in 2006, discussed above; a letter of reprimand and a counseling in 2011, and two 7-day suspensions in 2012. *Id.* at 64; ID at 36-37. The deciding official stated that his confidence in the appellant was eroded. IAF, Tab 6 at 65. He further determined that the proposed discipline fell squarely within the agency's table of penalties, which provided that the penalty range for a first offense of failure to cooperate with an official investigation ranged from a written reprimand to a removal, and that the penalty for a third offense of unprofessional and discourteous conduct ranged from a 15-day suspension to a removal. *Id.*

The administrative judge found that the deciding official thoroughly considered the relevant *Douglas* factors and exercised his discretion within the tolerable limits of reasonableness in mitigating the proposed 45-day suspension to a 40-day suspension. ID at 37-38. Recognizing that the Board must accord proper deference to the agency's primary discretion in managing its workforce, we see no reason to disturb this finding. *See Douglas*, 5 M.S.P.R. at 306.

The appellant did not prove his claims of bias and abuse of discretion by the administrative judge.

On review, the appellant argues that the administrative judge was rude, raised her voice to him, and showed bias in favor of his female coworker.[9] PFR File, Tab 1 at 11-12, 14-15. There is a presumption of honesty and integrity on the part of administrative judges and the Board will not infer bias based on an administrative judge's case-related rulings. *See Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 18 (2013). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if her comments or actions evidence a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* Even if an administrative judge was somewhat abrupt and impatient with the appellant, such conduct would not establish bias. *Tyler v. U.S. Postal Service*, 90 M.S.P.R. 545, ¶ 8 (2002). Thus, we deny the appellant's bias claim.

The appellant also argues that the administrative judge abused her discretion in ruling on the admission of evidence. PFR File, Tab 1 at 4-5. For example, he references the agency's submitting a photograph of him with an assistant director, which the agency alleged he showed to his female coworker to support his assertion to her that he had a strong connection with upper management. ID at 14-15; IAF, Tab 8 at 72. He argues that the administrative judge abused her discretion by not allowing him to submit an unaltered group photograph as rebuttal evidence to prove that an agency employee had deleted the image of another manager from the photo.[10] PFR File, Tab 1 at 10-12.

---

[9] On appeal, the appellant filed a motion to have the administrative judge recuse herself, primarily asserting his disagreement with her rulings on discovery and procedural matters. IAF, Tab 73. The administrative judge denied his motion, finding that his claims of bias based on her judicial remarks, rulings, and conduct in an adjudicatory setting did not support a finding of bias or prejudice. IAF, Tab 81 at 3-4.

[10] Although the appellant claims that the agency altered the photograph, we disagree. PFR File, Tab 1 at 11-12. The photo does not appear altered as the appellant claims, but rather is an image of a portion of the photo. IAF, Tab 8 at 72.

To obtain reversal of an initial decision on the ground that the administrative judge abused her discretion in excluding evidence, the appellant must show on review that relevant evidence, which could have affected the outcome, was disallowed. *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 10 (2010). Here, the appellant does not challenge the finding that he showed his coworker the photo in question, and does not explain how presenting the complete image with additional people supports his argument that he did not engage in inappropriate conduct. PFR File, Tab 1 at 11-12. Nor do we discern how viewing the entire photo would have caused the administrative judge to find the agency did not prove this charge. ID at 14-16.

The appellant also appears to argue that the administrative judge violated Rule 102 of the Federal Rules of Civil Procedure when she allowed the agency to submit into evidence a "huge volume" of allegedly extraneous documents, emails, and tapes, over his representative's objection. PFR File, Tab 1 at 4. The appellant further argues that the volume of that evidence made it impossible "for anyone to ascertain the truth." *Id.* at 5. The appellant appears to be quoting Rule 102 of the Federal Rules of Evidence, which states that the purpose of the Federal Rules of Evidence is "to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102. The Board is not bound by the Federal Rules of Evidence but may look to them for guidance. *Holton v. Department of the Navy*, 123 M.S.P.R. 688, ¶ 13 n.4 (2016), *aff'd*, 884 F.3d 1142 (Fed. Cir. 2018). Even if we found it appropriate to apply Rule 102 here, it does not place any limitation on the volume of evidence an administrative judge may admit. Fed. R. Evid. 102. The administrative judge has wide discretion to control the proceedings in front of her and to receive relevant evidence. *Tisdell v. Department of the Air Force*, 94 M.S.P.R. 44, ¶ 13 (2003); 5 C.F.R. § 1201.41(b)(3). The appellant has

provided no compelling argument to support his claim that the administrative judge's rulings extended beyond this well-established discretion.

The appellant further argues that the administrative judge abused her discretion when she imposed sanctions against him for his repeated failure to identify his "prima facie defenses." PFR File, Tab 1 at 17-18. He argues that the sanctions were unreasonable because his representative had a sudden emergency and notified the administrative judge. *Id.* He also argues that the agency spent 3 years planning to terminate him, and the administrative judge did not provide his representative with enough time to review the voluminous documents and tapes submitted by the agency. *Id.*

We find that the administrative judge did not abuse her discretion when she imposed sanctions on the appellant. On several occasions, the administrative judge ordered the appellant to respond to the agency's discovery requests and the Board's May 25, 2016 Affirmative Defenses Order; explain his failures to respond as required by an Order to Show Cause, dated July 21, 2016; and file prehearing submissions. IAF, Tab 28, Tab 82 at 1-2. Based on the appellant's repeated failure to respond to her orders, the administrative judge sanctioned him. ID at 26; IAF, Tab 28. She allowed the appellant to present his affirmative defenses of harmful procedural error and discrimination (including retaliation) as expressed in his August 1, 2016 "Response to Show Cause Order" but prohibited him from calling any witnesses except for himself at the hearing and supplementing the record. ID at 26; IAF, Tab 28 at 3-4. These sanctions fall within the administrative judge's authority under the Board's regulations, which permit her to impose sanctions as necessary to serve the ends of justice when, as here, a party fails to comply with an order. *See* 5 C.F.R. §§ 1201.41(a), (b)(11), 1201.43(a)(2). We therefore find that the appellant did not prove that the administrative judge abused her discretion. Accordingly, we affirm the initial decision as modified.

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.